# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| WALMART REAL ESTATE BUSINESS TRUST, *et al.*, | * * * | |
| v. | * | Civil Case No. 18-3664-SAG |
| QUARTERFIELD PARTNERS, LLC, *et al.* | * * * | |

## MEMORANDUM OPINION

This case has been referred to me for all proceedings by consent of the parties. ECF 19, 26, 27. On February 14, 2019, Plaintiffs Walmart Real Estate Business Trust ("Walmart") and Sam's Real Estate Business Trust ("Sam's") (collectively, "Plaintiffs") filed an Amended Complaint against Defendants Quarterfield Partners LLC, BL Quarterfield Associates LLC, Q.O.P. Properties LLC, and Quarterfield Office Park LLC ("Defendants") for claims arising out of ground leases between Plaintiffs and Defendants. ECF 34. Defendants have filed a pre-discovery Motion to Dismiss the Amended Complaint or, in the Alternative, Motion for Judgment on the Pleadings, supported by a memorandum of law. ECF 39. Plaintiffs filed an opposition to the motion, and Defendants have replied. ECF 40, 41. No hearing is necessary to resolve the motion. *See* Local Rule 105(6) (D. Md. 2018). For the reasons that follow, I shall deny Defendants' Motion.

I. **Factual Background**[1]

This dispute arises from two ground leases, one executed between Defendants and Walmart ("Walmart Lease"), and the other executed between Defendants and Sam's ("Sam's Lease"). ECF 34 ¶¶ 10, 30.

A. **Walmart Lease**

On or about April 6, 2005, Walmart executed a ground lease with Defendants to build and operate a Walmart Super Center Store on a parcel of real property in Anne Arundel County, Maryland, owned by Defendants and consisting of approximately 20.919 acres (the "Walmart Parcel"). ECF 34 ¶¶ 10, 11; ECF 34-2. The Walmart Lease also provided Walmart with an option to purchase the Walmart Parcel ("Walmart Option"). ECF 34 ¶ 12; ECF 34-2. The Walmart Option provides, in relevant part:

> From the end of the tenth (10th) year of this Lease until the end of the eleventh (11th) year of this Lease (the "Option Term"), Lessor [Defendants] hereby grants to Lessee [Walmart] an option to purchase the Premises from Lessor on the terms and conditions set forth herein (the "Option"). Notwithstanding the foregoing, the Option Term shall not commence until Lessor sends to Lessee two (2) thirty (30) day notices of the commencement of the Option (the "Option Notice"). In the event Lessor fails to send such notice at the end of the ninth (9th) year of this Lease, then the Option Term shall be moved such that it is for a one year period commencing thirty (30) days after the Second Option Notice has been received by Lessee. Lessee may exercise the option to purchase the Premises by providing thirty (30) days notice to Lessor of its election to exercise the Option (the "Option Notice").

ECF 34-2 at 18; ECF 34 ¶ 12. The Walmart Lease also provides that the "initial term of this Lease shall be for a period commencing on the Effective Date and terminating on the date that is twenty (20) years after the Rent Commencement Date, unless sooner terminated or extended (the 'Initial Term')." ECF 34-2 at 4; ECF 34 ¶ 19.

---

[1] The factual allegations are derived from the Amended Complaint, ECF 34, including its accompanying exhibits: ECF 34-2 ("Walmart Lease"); ECF 34-3; ECF 34-4; ECF 34-5; 34-6 ("Sam's Lease"); ECF 34-7; ECF 34-8; and ECF 34-9.

On or about December 15, 2006, Walmart and Defendants executed a Short Form Lease and the Walmart Memorandum of Option, confirming Walmart's purchase option. ECF 34-3; ECF 34 ¶¶ 14, 15. Over time, Walmart and Defendants also executed various amendments to the Walmart Lease. ECF 34 ¶ 16. On or about June 23, 2008, Walmart and Defendants executed the fourteenth amendment to the Walmart Lease, providing that "Lessee opened for business on March 5, 2008," and the "Rent Commencement Date is March 5, 2008." *Id.* ¶¶ 17, 18; ECF 34-4. The fourteenth amendment also provided that "the initial term of the Lease shall expire on March 4, 2028." ECF 34-4; ECF 34 ¶ 20.

Walmart alleges that the initial term of the Walmart Lease is 20 years from the Rent Commencement Date of March 5, 2008, and, consequently, that the pertinent years for Walmart's Option are: March 5, 2017 to March 4, 2018 for Year 10; and March 5, 2018 to March 4, 2019 for Year 11. ECF 34 ¶¶ 21, 22. Accordingly, Walmart alleges that the Walmart Lease is now in its eleventh year, and that Walmart properly exercised its option to purchase, which Defendants have refused to honor. *Id.* ¶¶ 24-28. Walmart seeks relief in the form of monetary damages, specific performance, and declaratory relief. *Id.* at 10, 12, 13.

**B. Sam's Lease**

On or about April 6, 2005, Sam's executed a ground lease with Defendants to build and operate a Sam's Club Store on a parcel of real property located in Anne Arundel County, Maryland, owned by Defendants and consisting of approximately 16.055 acres (the "Sam's Parcel"). ECF 34 ¶¶ 10, 11; ECF 34-6. The Sam's Lease also provided Sam's with an option to purchase the Sam's Parcel ("Sam's Option"). ECF 34 ¶ 32; ECF 34-6. The Sam's Option provides, in relevant part:

> From the end of the tenth (10th) year of this Lease until the end of the eleventh (11th) year of this Lease (the "Option Term"), Lessor [Defendants] hereby grants to

> Lessee [Sam's] an option to purchase the Premises from Lessor on the terms and conditions set forth herein (the "Option"). Notwithstanding the foregoing, the Option Term shall not commence until Lessor sends to Lessee two (2) thirty (30) day notices of the commencement of the Option (the "Option Notice"). In the event Lessor fails to send such notice at the end of the ninth (9th) year of this Lease, then the Option Term shall be moved such that it is for a one year period commencing thirty (30) days after the Second Option Notice has been received by Lessee. Lessee may exercise the option to purchase the Premises by providing thirty (30) days notice to Lessor of its election to exercise the Option (the "Option Notice").

ECF 34-6 at 17-18; ECF 34 ¶ 32. The Sam's Lease also provides that the "initial term of this Lease shall be for a period commencing on the Effective Date and terminating on the date that is twenty (20) years after the Rent Commencement Date, unless sooner terminated or extended (the 'Initial Term')." ECF 34-6 at 4; ECF 34 ¶ 38.

On or about March 9, 2007, Sam's and Defendants executed a Short Form Lease and the Sam's Memorandum of Option, confirming Sam's purchase option. ECF 34-7; ECF 34 ¶¶ 34, 35. Sam's and Defendants also executed various amendments to the Sam's Lease. ECF 34 ¶ 36. On or about June 23, 2008, Sam's and Defendants executed the seventeenth amendment to the Sam's Lease, providing that "Lessee opened for business on February 21, 2008," and the "Rent Commencement Date is February 21, 2008." *Id.* ¶¶ 37, 38; ECF 34-8. The seventeenth amendment also provided that "the initial term of the Lease shall expire on February 20, 2028." ECF 34-8; ECF 34 ¶ 39.

Sam's alleges that the initial term of the Sam's Lease is 20 years from the Rent Commencement Date of February 21, 2008, and, consequently, that the pertinent years for Sam's purchase option are: February 21, 2017 to February 20, 2018 for Year 10; and February 21, 2018 to February 20, 2019 for Year 11. ECF 34 ¶¶ 40, 41. Accordingly, Sam's alleges that the Sam's Lease is now in its eleventh year, and that Sam's properly exercised its option to purchase, which

Defendants have refused to honor. *Id.* ¶¶ 42-47. Sam's seeks relief in the form of monetary damages, specific performance, and declaratory relief. *Id.* at 10, 12, 13.

**II.     Legal Standards**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint or count. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). In a Rule 12(b)(6) motion, a defendant asserts that, as a matter of law, the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Federal Rule of Civil Procedure 8(a)(2) sets forth the requirements for pleading a claim, specifically that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." That Rule is intended to ensure that defendants have "fair notice" of the claims against them. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

A complaint complies with the relevant pleading standards where it sets forth facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions.") (quotation and citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). The facts alleged must be more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint consisting of "a formulaic recitation of the elements of a cause of action" is also insufficient. *Twombly*, 550 U.S. at 555. Although a plaintiff need not include "detailed factual allegations," the complaint must contain "enough factual matter (taken as true) to suggest" a viable claim, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Id.* at 555, 556 (internal quotation marks omitted).

A court reviewing a Rule 12(b)(6) motion "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quotations and citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, the court need not accept the legal conclusions a plaintiff draws from the facts alleged. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed, as long as it is early enough not to delay trial." *Prosperity Mortg. Co. v. Certain Underwriters at Lloyd's, London*, No. GLR-12-2004, 2013 WL 3713690, at *2 (D. Md. July 15, 2013). The pleadings are closed when the defendant files an answer. *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002). A Rule 12(c) motion is governed by the same standard as Rule 12(b)(6) motions to dismiss. *Id.* at 406.

**III. Analysis**

Under Maryland law,[2] "[l]eases are contracts and, as such, are to be construed by application of the well established rules of contract interpretation." *Middlebrook Tech, LLC v. Moore*, 157 Md. App. 40, 65 (2004). "The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law." *Sy-Lene of Washington, Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 163 (2003). "When the clear language of a contract is unambiguous, the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." *Id.* at 167. The Court, therefore, will apply the objective

---

[2] Both the Walmart Lease and the Sam's Lease provide that Maryland law governs. *See* ECF 34-2 at 16 ("This Lease shall be construed under and governed by the laws of the State in which the Premises are located."); ECF 34-6 at 16 (same).

6

law of contract interpretation. *See id.* at 166 ("Maryland follows the law of objective contract interpretation.").

Under Maryland's objective approach to contract interpretation, the Court "must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Gen. Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985). If "the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed." *Id.* In this situation, "the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id.* Plain and unambiguous language "will not give away to what the parties would have thought it meant." *Id.* (citing *Bd. of Trs. v. Sherman*, 373 A.2d 626, 629 (Md. 1977)).

The construction of an unambiguous contract is for the Court alone to determine. *Wells v. Chevy Chase Bank, F.S.B.*, 768 A.2d 620, 630 (Md. 2001). Thus, if the Court determines that a contract is unambiguous on a dispositive issue, "it may then properly interpret the contract as a matter of law." *Cochran v. Norkunas*, 919 A.2d 700, 709 n.8 (Md. 2007) (quoting *Wash. Metro Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007)).

A written contract is not ambiguous "simply because, in litigation, the parties offer different meanings to the language." *Diamond Point Plaza Ltd., P'ship v. Wells Fargo Bank, N.A.*, 929 A.2d 932, 952 (Md. 2007). Rather, "a written contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999) (citing *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 578 A.2d 1202, 1208 (Md. 1990)). When determining whether a contract is ambiguous, the Court will

7

consider "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Id.* (quoting *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985)). If the terms of a contract are ambiguous, the court may consider extrinsic evidence and parol evidence to ascertain the intentions of the parties. *Sullins v. Allstate Ins. Co.*, 667 A.2d 617, 619 (Md. 1995).

To allege breach of contract, a plaintiff must plead "that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). Plaintiffs allege the existence of valid contracts in the form of the ground leases, attached as Exhibits 1 and 5 to the Amended Complaint. ECF 34-2, 34-6. Both leases contain near identical sections entitled "Option to Purchase," setting the terms under which Walmart and Sam's may exercise options to purchase their respective premises. ECF 34-2 § 27; ECF 34-6 § 27. Walmart alleges that it properly exercised its option to purchase by sending notice on September 19, 2018 to Defendants, pursuant to the option granted in Section 27 of the Walmart Lease. ECF 34 ¶ 27. Sam's also alleges that it properly exercised its option to purchase by sending notice on January 24, 2019 to Defendants, pursuant to the option granted in Section 27 of the Sam's Lease. *Id.* ¶ 46. Both notices are attached to the Amended Complaint as Exhibits 4 and 8. ECF 34-5, ECF 34-9.

Plaintiffs allege that Defendants have failed to honor both options to purchase and, consequently, are in breach of both leases. ECF 34 ¶¶ 28, 47. Defendants contend that Plaintiffs did not properly exercise their options, because Defendants had not sent the requisite 30-day notices to trigger the options. ECF 41 at 4. Both options provide, "the Option Term shall not commence until Lessor sends to Lessee two (2) thirty (30) day notices of the commencement of the Option (the 'Option Notice')." ECF 34-2 § 27; ECF 34-6 § 27. The options also provide, "[in]

the event Lessor fails to send such notice at the end of the ninth (9th) year of this Lease, then the Option Term shall be moved such that it is for a one year period commencing thirty (30) days after the Second Option Notice has been received by Lessee." *Id.* Finally, the options state, "[l]essee may exercise the option to purchase the Premises by providing thirty (30) days notice to Lessor of its election to exercise the Option ('the Option Notice')." *Id.* Plaintiffs do not dispute that Defendants never sent thirty-day notices of the commencement of the options. However, they maintain that Defendants' failure to send any notice was a breach of the express terms of the leases. ECF 40 at 15-16.

Defendants also argue that Plaintiffs have incorrectly calculated the pertinent time frame for exercising the options, and that the time frame within which to exercise the options expired in April of 2016, and not in February of 2019, as Plaintiffs have calculated. *Compare* ECF 41 at 6, *with* ECF 34 ¶ 41. The option clauses provide, "[f]rom the end of the tenth (10th) year of this Lease until the end of the eleventh (11th) year of this Lease (the 'Option Term'), Lessor hereby grants to Lessee an option to purchase the Premises from Lessor on the terms and conditions set forth herein (the 'Option')." ECF 34-2 § 27; ECF 34-6 § 27. Defendants maintain that the relevant start dates for the options are the dates when the respective leases were executed. ECF 41 at 6-10. Plaintiffs, on the other hand, allege that the relevant start dates are the "rent commencement dates," or the dates on which Plaintiffs were required to begin paying rent for their respective premises for the initial twenty-year terms of the leases. ECF 34 ¶¶ 21, 40; ECF 40 at 14-15.

The parties also disagree over whether the options were intended to benefit only one party, both arguing that the options were intended principally for their own benefit. *See* ECF 40 at 13 ("the Option Term Notice is solely for the benefit of Plaintiffs"); ECF 41 at 6 ("the Option Term was principally for Defendants' benefit"). The parties also maintain that the options are

unambiguous, warranting a decision in their respective favor. *See* ECF 40 at 14 ("[t]he Option to Purchase provisions of the Ground leases clearly and unambiguously grant Plaintiffs the right to exercise their Options to Purchase"); ECF 41 at 5 ("[t]here is no ambiguity in paragraph 27 of the Lease").

The option clauses at issue are not models of clarity.[3] While the parties clearly offer different meanings of the option clauses in totality, the relevant question is whether a reasonably prudent person could read more than one meaning from the language used. *See Calomiris*, 727 A.2d at 363. In Maryland, an option to purchase property is "a continuing offer to sell by the optionor which is irrevocable during the stated period," and it "is not a mere offer to sell, but is a binding agreement if supported by consideration." *Prince George's Cty. v. Silverman*, 58 Md. App. 41, 56, 472 A.2d 104, 111 (1984) (citing *Beall v. Beall*, 291 Md. 224, 434 A.2d 1015 (1981); *Blondell v. Turover*, 195 Md. 251, 72 A.2d 697 (1949)). In terms of ambiguity, although both parties insist that the options are unambiguous, it is within the Court's discretion to determine whether they are ambiguous. *See Calomiris*, 727 A.2d at 362 ("We have frequently stated the general rule that '[t]he question of whether a contract is ambiguous ordinarily is determined by the court as a question of law.'") (quoting *State Highway v. Bramble*, 351 Md. 226, 239, 717 A.2d 943, 949 (1998)).

Considering the nature of an option contract, its purpose, and the circumstances of the leases at issue, the Court finds that the language at issue is susceptible to more than one meaning. For example, it is not clear how the parties intended to calculate the tenth and eleventh year of the leases, as required by the option. Nor is it clear whether Plaintiffs could exercise the option in the

---

[3] As one example, the clauses simultaneously define the term "Option Notice" as the two 30-day notices required by Defendants, and the Plaintiffs' thirty-day notices of their elections to exercise the options. *See* ECF 34-2 § 27; ECF 34-6 § 27.

absence of Defendants' notice, or whether Defendants were permitted to withhold the notice altogether. In addition, Defendants' claim that the options were intended solely for their benefit may be problematic, as options are typically intended for the benefit of the optionee. *See, e.g.*, *Straley v. Osborne*, 262 Md. 514, 521, 278 A.2d 64, 68 (1971) ("The distinguishing features of an option are that it is a continuing and irrevocable offer by the optionor, which cannot be withdrawn by him during the stated period."); 1 Williston on Contracts § 5:16 (4th ed.) ("Typically, the option is for the benefit of the optionee, and logically, if the optionee stands to make a substantial gain by exercising the option and the optionor must stand by idly awaiting the decision, it is appropriate that the optionee pay for the privilege."). Even assuming arguendo that the options were intended to mutually benefit the parties, they could not be waived unilaterally by Defendants under the case law Defendants themselves cited. ECF 41 at 6 n.2 ("'[A] party cannot waive a contractual requirement that benefits both sides to the transaction.'" (quoting *Rockledge Associates LLC v. Transamerica Life Insurance Co.*, Case No. PWG-16-710, 2017 WL 1239182, at *10 (D. Md. Feb. 3, 2017))).

In light of these ambiguities described above, it would be premature for this Court to determine, as a matter of law, whether Plaintiffs appropriately exercised their options and are entitled to specific performance. *See Butz v. Pulte Home Corp.*, Case No. PX 16-1508, 2017 WL 679226, at * 4 (D. Md. Feb. 21, 2017) ("[I]t bears noting that generally 'the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim.'") (quoting *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 978 F.2d 140, 143 (4th Cir. 1992)). Discovery is needed to permit the parties to explore extrinsic and/or parol evidence which may establish the intentions of the parties, and to determine who drafted the option clauses, as it is well-settled that ambiguities are resolved against the drafter. *See*

*Canaras v. Lift Truck Servs., Inc.*, 272 Md. 337, 356, 322 A.3d 866, 876-77 (1974) (citing *Lakrest Dev. Co. v. Eisele*, 258 Md. 45, 50, 265 A.2d 187, 189 (1970); *Kelley Constr. Co. v. Washington Suburban Sanitary Comm.*, 247 Md. 241, 250, 230 A.2d 672, 678 (1967); *Cadem v. Nanna*, 243 Md. 536, 544, 221 A.2d 703, 708 (1966)); *see also Post v. Bregman*, 112 Md. App. 738, 686 A.2d 665 (1996), *rev'd on other grounds*, 349 Md. 142, 707 A.2d 806 (1998); *I.A. Const. Corp. v. Equiptec, Inc.*, 95 Md. App. 574, 662 A.2d 206 (1993); *L & H Enterprises, Inc. v. Allied Bldg Products Corp.*, 88 Md. App. 642, 596 A.2d 672 (1991).

## IX. Conclusion

For the reasons set forth above, I shall deny Defendants' Motion to Dismiss. A separate Order follows.

Dated: April 12, 2019                                       /s/
                                                            Stephanie A. Gallagher
                                                            United States Magistrate Judge