IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WALMART REAL ESTATE BUSINESS TRUST, *et al.*, | * |
| Plaintiffs, | * |
| v. | *   Civil No. TJS-18-3664 |
| QUARTERFIELD PARTNERS, LLC, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

This case is assigned to me for all proceedings by the consent of the parties, pursuant to 28 U.S.C. § 636(c).[1] *See* ECF No. 21. Pending before the Court is the Supplemental Motion for Summary Judgment as to Count III of the Amended Complaint ("Motion") (ECF No. 101) filed by Plaintiffs Walmart Real Estate Business Trust ("Walmart") and Sam's Real Estate Business Trust ("Sam's"). Having considered the parties' submissions (ECF Nos. 101, 107 & 108), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be granted in part and denied in part.

**I.      Background**

Plaintiffs' Amended Complaint (ECF No. 34) asserts three claims against Defendants Quarterfield Partners, LLC, *et al.* (collectively, "Quarterfield"): declaratory judgment (Count I), breach of contract – specific performance (Count II), and breach of contract (Count III). All three claims arise from Quarterfield's breach of its lease agreements with Walmart and Sam's.

---

[1] This case was previously assigned to Judge Russell, then to Judge Gallagher, and then to Judge Boardman. It was reassigned to me on August 30, 2021.

Previously, when the case was assigned to Judge Boardman, the Court granted summary judgment to Plaintiffs on the declaratory judgment (Count I) and breach of contract - specific performance (count II) claims. *Walmart Real Est. Bus. Tr. v. Quarterfield Partners, LLC*, No. DLB-18-3664, 2020 WL 3960832, at *13 (D. Md. July 10, 2020). The Court held that Section 27 of Plaintiffs' lease agreements with Quarterfield granted Plaintiffs an option to purchase the properties they are leasing, that Quarterfield failed to provide the notice required under the leases, and that Plaintiffs have the right under their leases to purchase the respective properties. *Id.* Summarizing its ruling, the Court stated:

> Quarterfield promised Walmart and Sam's an option to purchase the properties ten years after the stores opened for business. Quarterfield was obligated under the lease to provide Walmart and Sam's with notices of the option. By refusing to issue the notices and refusing to negotiate the sale of the properties as they were required to do under the lease, Quarterfield has breached the lease.

*Id.*

The Court ordered Quarterfield to "execute the Purchase Agreement with Walmart and Sam's in accordance with the terms in Section 27 of the lease." ECF No. 68. At the parties' request, the Court stayed its order so that the parties could file an interlocutory appeal to the United States Court of Appeals for the Fourth Circuit. ECF No. 71. The Fourth Circuit granted Quarterfield's request for permission to pursue its interlocutory appeal, ECF No. 72, but later dismissed the appeal as improvidently granted. *Walmart Real Est. Bus. v. Quarterfield Partners LLC*, No. 20-1927, 2022 WL 16859737, at *2 (4th Cir. Nov. 10, 2022).

After the Fourth Circuit's mandate issued, Quarterfield moved for relief from the Court's order granting summary judgment to Plaintiffs. ECF No. 93. The Court denied Quarterfield's motion because "Judge Boardman's opinion is completely correct and contains no error." ECF No. 98 at 2. The Court also granted Plaintiffs leave to file a supplemental motion for summary

judgment as to their claim for damages. *Id.* Plaintiffs filed their supplemental motion as instructed and the Motion is now ripe for decision.

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict for the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Yet the "mere existence of a scintilla of evidence in support of the [opposing party's] position" cannot defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest on the mere allegations or denials of its pleading but must cite "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

**III.    Discussion**

   **A.    Statement of Facts**

The following facts are undisputed and are viewed in the light most favorable to Quarterfield, the non-moving party.[2] Judge Boardman previously determined that Plaintiffs had the right to purchase their respective properties under the terms of their lease agreements with Quarterfield. Section 27 of the leases provides that the "terms and conditions of the purchase and sale of the Premises shall be set forth in the purchase agreement attached hereto as *Exhibit J* and incorporated herein (the 'Purchase Agreement')." ECF Nos. 34-2 at 18 and 34-6 at 17-18. The Purchase Agreements establish a closing date for Plaintiffs' purchase of their respective properties:

> Closing. Closing shall occur at a place and time mutually agreed upon by the parties, on or before the later of (a) sixty (60) days following the expiration of the Feasibility Period or (b) thirty (30) days after Purchaser's receipt of all of the Governmental Approvals, as defined in Section 16 (the "Closing").

ECF Nos. 34-2 at 37 and 34-6 at 37.[3]

The Feasibility Period referenced in the Purchase Agreement allowed Plaintiffs 60 days from the Effective Date in each lease to conduct a feasibility study and to cancel the purchase at their sole option. ECF Nos. 34-2 at 36 and 34-6 at 36. The Effective Date for each lease is defined as the latter of the dates on which Plaintiffs or Quarterfield execute the Purchase Agreement. ECF Nos. 34-2 at 38 and 34-6 at 38. Walmart sent notice of its intent to exercise the purchase option under its lease on September 19, 2018. *Quarterfield Partners*, 2020 WL 3960832, at *5. Sam's sent its notice on January 24, 2019. *Id.* Adding 120 days to the dates that Plaintiffs sent their notices leads to closing dates of January 17, 2019 (for Walmart) and May 24, 2019 (for Sam's). If

---

[2] The Court will not restate the facts recited in Judge Boardman's July 10, 2020, opinion. Instead, the Court will limit the statement of facts to those relevant to Plaintiffs' pending Motion.
[3] The parties agree that the "Government Approvals" section of this provision is irrelevant.

4

Quarterfield had not beached its leases with Plaintiffs, Walmart would have owned its property on January 17, 2019, and Sam's would have owned its property on May 24, 2019. If Plaintiffs had owned the properties on these dates, they would have ceased paying rent to Quarterfield. Because Quarterfield did not convey the properties to Plaintiffs, as required by the leases, Walmart and Sam's continued to pay rent to Quarterfield.

At first, Walmart and Sam's paid rent directly to Quarterfield. Beginning in September 2020, by agreement of the parties, Walmart and Sam's paid rent into an escrow account (starting with the rent due for October 2020). In March 2023, again by agreement of the parties, Plaintiffs ceased paying rent altogether.

### B.  The Court Will Not Reconsider Judge Boardman's Opinion Again.

Quarterfield argues that the Court should "revisit its analysis" of Section 27 of the leases. ECF No. 107 at 4-8. The Court declines to do so. As the Court stated before, Judge Boardman's analysis of the leases, *see* ECF No. 67, is completely correct and contains no error. ECF No. 98. Because summary judgment was properly entered against Quarterfield on Counts I and II, the only matter left for the Court to decide is the amount of damages to which Plaintiffs are entitled under Count III.

### C.  Plaintiffs Are Entitled to the Reimbursement of All Rents Paid After the Contractual Closing Dates.

Plaintiffs argue that they are entitled to an award of damages that reimburses them for the rent paid to Quarterfield after the closing dates. ECF No. 101-1 at 7-10. Quarterfield argues that it is not liable for these damages (because, in its view, Judge Boardman committed reversible error), but it "does not dispute Plaintiffs' calculation of the amounts they paid in rent before the rent escrow was established." ECF No. 107 at 8. And Quarterfield does not dispute the amounts held in the rent escrow accounts.

The Court finds that Plaintiffs are entitled to the reimbursement of all rents paid after the contractual closing dates for damages caused by Quarterfield's breach of the leases. Walmart will be awarded $1,315,756.77 for the rent it paid directly to Quarterfield, plus the contents of the rent escrow account ending 98-27 (including the interest credit). Sam's will be awarded $837,689.71 for the rent it paid directly to Quarterfield, plus the contents of the rent escrow account ending 19-27 (including the interest credit).

### D. Plaintiffs are Not Entitled to Prejudgment Interest.

Plaintiffs seek an award of prejudgment interest at the rate of six percent *per annum* on the rent they paid directly to Quarterfield.[4] ECF No. 101-1 at 8. Quarterfield objects to Plaintiffs' request for prejudgment interest. ECF No. 107 at 8-9. It argues that prejudgment interest is an exceptional remedy, the award of which is in the discretion of the factfinder. *Id.* at 8. Quarterfield states that because Plaintiffs retained use of the premises at all times, they "did not lose anything of material value," and are thus not entitled to compensation in the form of prejudgment interest. *Id.* at 9. Awarding prejudgment interest to a party that was not actually harmed by the prejudgment deprivation of the funds, it argues, does not serve the purpose for which awards of prejudgment interest are made. *Id.*

"State law governs the award of prejudgment interest in a diversity case." *Parkway 1046, LLC v. U. S. Home Corp.*, 961 F.3d 301, 311 (4th Cir. 2020) (internal quotation marks omitted). In Maryland, "three basic rules" govern the allowance of prejudgment interest. *Id.* (citing *Harford Cty. v. Saks Fifth Ave. Distribution Co.*, 399 Md. 73 (2007)). First, prejudgment interest *must* be granted where "the obligation to pay and the amount due" were "certain, definite, and liquidated

---

[4] Plaintiffs do not seek an award of prejudgment interest on the funds held in the rent escrow accounts.

by a specific date prior to judgment," in which case interest accrues from when "payment was due." *Id.* (internal citations omitted). Second, prejudgment interest *may not* be granted in tort cases arising from bodily harm, emotional distress or "similar intangible elements of damage not easily susceptible of precise measurement." *Id.* (internal citation omitted). Third, prejudgment interest *may* be granted in the "broad category of contract cases," but is left to the discretion of the factfinder. *Id.* (internal citations omitted).

> Judge Hollander has explained the importance of prejudgment interest:
>
> Notably, "[p]rejudgment interest serves two purposes: first, it compensates [a party] for the loss of the use of his or her money; and, second, it forces the defendant to relinquish any benefit that it has received by retaining the plaintiff's money in the interim." *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011). Post judgment interest "is awarded to compensate a plaintiff for having been deprived of the value of principal losses from the time of judgment to the time that the plaintiff is actually paid. Thus, prejudgment and postjudgment interest serve exactly the same purpose, albeit for different time periods: they make the [party] whole for having been deprived of the use of the principal loss amount." *Becker Holding Corp. v. Becker*, 78 F.3d 514, 516 (11th Cir. 1996).

*Shadrin v. Hunter Warfield Inc.*, No. ELH-22-3228, 2023 WL 4664037, at *13 (D. Md. July 19, 2023). Under Maryland law, prejudgment interest is set at the rate of six percent *per annum*. *Id.* (citing Md. Const. Art. III, § 57).

The Court finds that Plaintiffs have not shown that they are entitled to prejudgment interest as a matter of law. Plaintiffs' claims are for breach of contract, so the Court must first determine whether the first rule (prejudgment interest is mandatory) or the third rule (prejudgment interest is discretionary) applies. "Courts must determine whether a contract case falls under the first or third category based on their level of certainty as to the existence, amount, and due date of an obligation to pay." *Parkway 1046*, 961 F.3d at 312; *Metromont Corp. v. Allan Myers, L.P.*, No. DKC-18-3928, 2021 WL 3367772, at *13 (D. Md. Aug. 3, 2021). If the Court is certain that an obligation to pay existed on a known date, "the effect of the debtor's withholding payment [is] to deprive the

7

creditor of the use of a fixed amount as of a known date, and mandatory prejudgment interest is meant to rectify the situation." *Id.* (internal quotation marks omitted). But when "the impact of withholding payment is less certain, the trier of fact has discretion to award prejudgment interest as appropriate to the unique circumstances of the case." *Id.* Pre-judgment interest as a matter of right "is the exception rather than the rule." *Ver Brycke v. Ver Brycke*, 379 Md. 669, 702 (2004).

This case does not fall into the first category of mandatory prejudgment interest because it is unclear what payment Quarterfield owed to Plaintiffs, and when that payment was required to be made. The leases at issue required Quarterfield to sell properties to Plaintiffs; they did not require Quarterfield to make payments to Plaintiffs. It is difficult to make this case fit into the pattern of other cases where courts have determined prejudgment interest is required as a matter of law. The Court finds that this case is similar to most other breach of contract cases, "falling between the extremes" of when an award of prejudgment interest is prohibited and when it is mandatory. *Tricat Indus., Inc. v. Harper*, 131 Md. App. 89, 123 (2000); *see also Lighting Retrofit Int'l, LLC v. Constellation NewEnergy, Inc.*, No. SAG-19-2751, 2023 WL 2306962, at *13 (D. Md. Mar. 1, 2023) ("Given the presumption against mandatory prejudgment interest, this Court concludes that this case falls within the vast majority of contract cases under Maryland law for which prejudgment interest is left to the factfinder's discretion." (internal quotation marks omitted)). The Court believes that an award of prejudgment interest is discretionary in this case.

The Court declines to exercise its discretion to award prejudgment interest to Plaintiffs because they will be made whole through other forms of damages. Prejudgment interest is not necessary in this case, and its award would probably amount to a windfall for Plaintiffs. Although Plaintiffs were required to pay rent to Quarterfield after they should have held title to the properties, they also continued to use the properties without interruption. All the money that

Plaintiffs paid to Quarterfield in rent will be returned to them (plus the interest that accrued in the rent escrow accounts). And as explained below, Plaintiffs will be awarded reasonable attorney's fees and costs to compensate them for the expenses incurred in successfully prosecuting their claims. The return of the funds that Plaintiffs paid to Quarterfield in rent after the contractual closing dates, along with reimbursement for Plaintiffs' attorney's fees and costs, is sufficient to compensate Plaintiffs for their losses.

### E.  Plaintiffs are Entitled to Attorney's Fees and Costs.

Plaintiffs seek an award of reasonable attorney's fees and costs.[5] ECF No. 101-1 at 9-10. They argue that Section 24 of the leases entitles them to attorney's fees and costs as the prevailing parties. *Id.* at 9. Section 24 of each lease states:

> Should any legal action be commenced in connection with this Lease, the prevailing party in such action shall be entitled to recover, in addition to court costs, such amount as the court may adjudge as reasonable attorneys' fees.

ECF Nos. 34-2 at 16 and 34-6 at 16.

Quarterfield objects to Plaintiffs' request for attorney's fees and costs. ECF No. 107 at 9-13. It argues that Plaintiffs did not prevail in connection with Quarterfield's breach of the leases, but instead with Quarterfield's breach of the Purchase Agreements attached to the leases. Section 27 of the Purchase Agreements provides:

> Attorney's Fees; Court Costs. In any action or proceeding arising out of this Agreement, each party shall bear its own attorney's fees, and the prevailing party shall be entitled to recover only court costs from the non-prevailing party incurred by such party in enforcing its rights hereunder. In the event of a legal dispute, the laws of the State where the Property is located shall prevail.

---

[5] Plaintiffs have not submitted evidence of the attorney's fees and costs incurred, or a memorandum in support. Instead, they offer to submit such materials after the entry of judgment, which is consistent with Local Rule 109.2 ("Unless otherwise provided by statute, L.R. 109.2.c, or otherwise ordered by the Court, any motion requesting the award of attorneys' fees must be filed within fourteen (14) days of the entry of judgment.").

ECF Nos. 34-2 at 38 and 34-6 at 38.

The Court finds that the claims upon which Plaintiffs have prevailed relate to the leases, and that Section 24(m) of the leases permits an award of reasonable attorney's fees and costs to Plaintiffs. As Judge Boardman stated:

> Quarterfield was obligated *under the lease* to provide Walmart and Sam's with notices of the option [to purchase the properties]. By refusing to issue the notices and refusing to negotiate the sale of the properties as they were required to *do under the lease*, Quarterfield has *breached the lease.* The Court will grant plaintiffs' motion as to [Plaintiffs' claim for specific performance] and order that Quarterfield execute the Purchase Agreement in accordance with *Section 27 of the lease.*

*Quarterfield Partners*, 2020 WL 3960832, at *13 (emphasis added).

Judge Boardman's reasoning is sound. Plaintiffs' claims arise from Quarterfield's refusal to issue the notices required by the leases and its refusal to sell the properties to Plaintiffs after Plaintiffs sent notice of their intent to exercise the purchase options. In refusing to issue the notices and in refusing to sell the properties to Plaintiffs, Quarterfield breached Section 27 of its leases. As Judge Boardman explained, Section 27 of the leases required Quarterfield to provide notice of the option to purchase and to sell the properties to Plaintiffs if they exercised their purchase option. *Id.*

It is true, as Quarterfield notes, that Section 27 incorporates the Purchase Agreement into its terms, but this is only to establish the "remainder of the terms" for the sale of the properties. The first two terms of the Purchase Agreement ("Sale and Purchase" and "Purchase Price") are already covered in Section 27 of the leases. And the remaining terms of the Purchase Agreement have little to do with Plaintiffs' claims. The Court rejects Quarterfield's interpretation of the Purchase Agreements' attorney-fee prohibition as controlling over the cost-shifting provision in Section 24(m) of the leases. Plaintiffs' claims arise from Quarterfield's breach of Section 27 of the leases. Under the unambiguous terms of Section 24(m), Plaintiffs are entitled to an award of

10

reasonable attorney's fees and costs incurred in connection with the successful prosecution of their claims.

Plaintiffs shall file their memorandum and evidence in support of their request for attorney's fees and costs in accordance with Local Rule 109.2 and Appendix B to the Local Rules.

### F. Plaintiffs Are Entitled to Additional Relief.

Plaintiffs requests that the Court order that both Walmart and Sam's may "credit the amount of the judgment together with pre- and post-judgment interest against the purchase price set forth in the purchase agreement delivered to Defendants pursuant to the terms of the lease." ECF No. 101-1 at 10. Quarterfield has not objected to this request. The Court will order that Plaintiffs may credit the amount of the judgment, along with post-judgment interest, against the purchase price of the properties.

## IV. Conclusion

For the reasons stated above, Plaintiffs' Motion is **GRANTED IN PART** and **DENIED IN PART**. The Court will enter judgment in favor of Walmart in the amount of $1,315,756.77 and in favor of Sam's in the amount of $837,689.71, plus post-judgment interest at the legal rate, *see* 28 U.S.C. § 1961. Walmart is entitled to withdraw all of the funds currently held in the rent escrow account at Sandy Spring Bank (account number ending 98-27), including the interest that has accrued on the funds in the account.. And Sam's is entitled to withdraw all of the funds currently held in the rent escrow account at Sandy Spring Bank (account number ending 19-27), including the interest that has accrued on the funds in the account. Plaintiffs may credit the amount of the judgment together with post-judgment interest against the purchase price set forth in the purchase agreements delivered to Quarterfield under the leases. Plaintiffs shall submit a memorandum and supporting evidence in support of their request for an award of attorney's fees and costs in

accordance with Local Rule 109.2. An Order will be docketed separately pursuant to Fed. R. Civ. P. 58(a).

Date: April 5, 2024                                         /s/
                                                   Timothy J. Sullivan
                                                   Chief United States Magistrate Judge